# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Carl E. Krehnovi,

      Petitioner

v.

Brian E. Williams, et al.,

      Respondents

Case No.: 2:18-cv-01416-JAD-VCF

**Order Denying Petition for
Habeas Relief and
Closing Case**

Petitioner Carl E. Krehnovi was found guilty of battery constituting domestic violence in Nevada State Court and sentenced to 60–180 months in prison.[1]  In a one-count petition with three subparts, Krehnovi seeks a writ of habeas corpus under 28 U.S.C. § 2254 based on claims that his trial counsel was ineffective.[2]  Having evaluated the merits of those claims, I find that habeas relief is not warranted, so I deny Krehnovi's petition, deny him a certificate of appealability, and close this case.

## Background

### A.    The facts underlying Krehnovi's conviction[3]

On October 28, 2011, Krehnovi was in a dating relationship with Shirley Levine.  On that date, Krehnovi, Levine, and Levine's friend, Shawn Kelley, drove to Wal-Mart.  Levine was driving, Krehnovi rode in the front passenger seat, and Kelley was in the backseat.  During the drive, an altercation occurred between Krehnovi and Levine in which Krehnovi alleged that Levine tried to claw him, and he, in self-defense, struck Levine in the nose.  Kelley did not substantiate Krehnovi's self-defense claims in his police statement.  Krehnovi exited the vehicle

---

[1] ECF No. 11-25.

[2] ECF No. 8.

[3] These facts are taken from Krehnovi's arraignment and his testimony at the post-conviction evidentiary hearing.  ECF No. 11-13; ECF No. 12-20 at 25, 40–41.  For simplicity's sake, I cite to these exhibits generally for this background section.

as soon as it came to a stop.  Krehnovi had previously committed two prior batteries constituting domestic violence within seven years.

**B.    Procedural history**

Krehnovi was charged with battery constituting domestic violence in state district court on May 2, 2012.[4]  He pleaded guilty on May 10, 2012,[5] stipulating as part of his plea deal to a five- to fifteen-year sentence under the small habitual criminal statute if he failed to appear for sentencing.[6]  Krehnovi failed to appear for his sentencing hearing and a bench warrant was issued for his arrest.[7]  Based on Krehnovi's failure to appeal, the State filed a notice of intent to seek punishment as a habitual criminal.[8]  The state district court adjudged Krehnovi as a habitual criminal and sentenced him to 60 to 180 months.[9]  Krehnovi did not appeal.

Krehnovi filed a pro se state habeas petition and a counseled, supplemental petition on September 17, 2013, and September 8, 2014, respectively.[10]  The state district court denied his petition without an evidentiary hearing.[11]  Krehnovi appealed, and the Nevada Court of Appeals reversed and remanded the matter to the state district court with instructions for the state district court to conduct an evidentiary hearing.[12]  The state district court held an evidentiary hearing on April 7, 2016,[13] and denied Krehnovi's petition again on June 17, 2016.[14]  Krehnovi appealed,

---

[4] ECF No. 11-12.

[5] ECF Nos. 11-13, 11-14.

[6] ECF No. 11-13 at 3.

[7] ECF No. 11-15.

[8] ECF No. 11-17.

[9] ECF No. 11-25.

[10] ECF Nos. 11-27, 11-28, 12.

[11] ECF No. 12-3.

[12] ECF No. 12-16.

[13] ECF No. 12-20.

[14] ECF No. 12-26.

and the Nevada Court of Appeals affirmed on August 16, 2017.[15]  Remittitur issued on September 11, 2017.[16]

Krehnovi filed this federal habeas petition on September 27, 2018.[17]  In his petition, Krehnovi alleges that his trial counsel failed to investigate his case, communicate with him, and file a motion to suppress or dismiss.[18]  The respondents answered Krehnovi's petition on November 26, 2018.[19]  Krehnovi did not reply.

## Discussion

**A.    Legal standards**

### *1.    Review under the Antiterrorism and Effective Death Penalty Act (AEDPA)*

If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief with respect to that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[20]  A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[21]  And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[22]  Section 2254 does not, however, "require state courts to *extend*" Supreme Court

---

[15] ECF No. 13-9.

[16] ECF No. 13-13.

[17] ECF No. 8.

[18] *Id.*

[19] ECF No. 10.

[20] 28 U.S.C. § 2254(d).

[21] *Price v. Vincent*, 538 U.S. 634, 640 (2003).

[22] *White v. Woodall*, 572 U.S. 415, 419 (2014).

precedent "to a new context where it should apply" or "license federal courts to treat the failure to do so as error."[23]  The "objectively unreasonable" standard is difficult to satisfy;[24] "even 'clear error' will not suffice."[25]

Habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[26]  As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[27]  "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[28]  AEDPA "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[29]

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[30]  The petitioner bears the burden of proving

---

[23] *Id.* at 1705–06.

[24] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[25] *Wood v. McDonald*, 575 U.S. 312, 316 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[26] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[27] *Id.* at 103.

[28] *Id.* at 101.

[29] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[30] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

by a preponderance of the evidence that he is entitled to habeas relief,[31] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[32]

### 2.    Standard for federal habeas review of an ineffective-assistance claim

The right to counsel embodied in the Sixth Amendment provides "the right to the effective assistance of counsel."[33]  Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to render 'adequate legal assistance[.]'"[34]  In the hallmark case of *Strickland v. Washington*, the United States Supreme Court held that an ineffective-assistance claim requires a petitioner to show that: (1) his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all of the circumstances of the particular case;[35] and (2) it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different.[36]  When the ineffective assistance of counsel claim arises out of the plea process, the *Strickland* prejudice prong requires the petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."[37]

A reasonable probability is "probability sufficient to undermine confidence in the outcome."[38]  Any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct so as to avoid the distorting effects of hindsight.[39]  "The question is whether an attorney's representation amounted to

---

[31] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

[32] 28 U.S.C. § 2254(e)(1).

[33] *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

[34] *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 335–36 (1980)).

[35] *Id.* at 690.

[36] *Id.* at 694.

[37] *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

[38] *Williams v. Taylor*, 529 U.S. 362, 390–91 (2000).

[39] *Strickland*, 466 U.S. at 689.

incompetence under prevailing professional norms, not whether it deviated from best practice or most common custom."[40]  The burden is on the petitioner to overcome the presumption that counsel made sound trial-strategy decisions.[41]

The United States Supreme Court has described federal review of a state supreme court's decision on an ineffective-assistance claim as "doubly deferential."[42]  The federal court must "take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d)'"[43] and consider only the record that was before the state court that adjudicated the claim on its merits.[44]

**B.    Evaluating Krehnovi's claims**

In Krehnovi's sole claim for relief, which contains three subparts, he alleges that his federal constitutional rights were violated by the ineffectiveness of his trial counsel.  I now address the three subparts of this claim in the order in which they were made.

**1.    *Ground 1(a)***

Krehnovi alleges that his federal constitutional rights were violated when his trial counsel failed to investigate his case before recommending that he accept a plea deal.[45]  Krehnovi asserts that his trial counsel should have investigated Levine's criminal background and mental history and interviewed Kelley.[46]  In affirming the denial of Krehnovi's state habeas petition, the Nevada Court of Appeal held:

> Krehnovi argued counsel was ineffective for failing to interview
> and investigate the victim regarding her criminal and mental health

---

[40] *Harrington*, 562 U.S. at 104.

[41] *Id.*

[42] *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

[43] *Id.*

[44] *Id.* at 181–84.

[45] ECF No. 8 at 6, 10.

[46] *Id.* at 11.

6

history and for failing to interview a witness to the domestic battery. Krehnovi failed to demonstrate counsel was deficient or resulting prejudice. The district court held an evidentiary hearing on this issue and found counsel was appointed only four days before Krehnovi agreed to plead guilty as part of a global plea agreement and Krehnovi failed to demonstrate what a more thorough investigation by counsel would have revealed or there was a reasonable probability Krehnovi would not have pleaded guilty and would have insisted on going to trial had counsel done further investigation. Substantial evidence supports the decision of the district court, and we conclude the district court did not err by denying this claim. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004).[47]

I find that the Nevada Court of Appeals' rejection of Krehnovi's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court. On January 25, 2012, in a separate case, Krehnovi was charged in state justice court with burglary, forgery, establishing or possessing a financial forgery laboratory, and possession of a forged instrument.[48] Two months later, on March 22, 2012, the State filed charges in state justice court against him for his instant case: battery constituting domestic violence.[49] The following day, March 23, 2012, Krehnovi informed the state justice court that Levine was previously represented by the public defender's office, so the state justice court appointed conflict counsel to represent Krehnovi on his domestic-battery case.[50] Six days later, on March 29, 2012, before Krehnovi met with his appointed trial counsel in his domestic-battery case,[51] he signed a guilty-plea agreement in his other case in which he was represented by the public defender's office, agreeing to plead guilty to attempted burglary in

---

[47] ECF No. 13-9 at 3.

[48] ECF No. 11-2.

[49] ECF No. 11-4.

[50] ECF No. 11-5.

[51] ECF No. 12-20 at 28.

7

return for the dropping of the other charges.[52]  Importantly, in that same document, Krehnovi "also agree[d] to plead guilty to battery constituting domestic violence" in his instant case.[53]

At a hearing on his domestic-battery case on April 26, 2012, the State noted the global settlement reached in Krehnovi's burglary case, and his trial counsel indicated that he had been in communication with Krehnovi's counsel in the burglary case about the global resolution.[54]  As a result of the global deal, Krehnovi waived his right to a preliminary hearing in the domestic-battery case.[55]  Krehnovi's trial counsel explained later that "[t]his was the [public defender's] global . . . case and [he] just handled the portion waiving [the domestic-battery case] up [to state district court] and they were supposed to handle everything from there."[56]  Indeed, Krehnovi's trial counsel explained that "the negotiations [in Krehnovi's domestic-battery case] all came through . . . [t]he public defender's office" on Krehnovi's burglary case.[57]

Krehnovi entered his guilty plea on the domestic-battery case in state district court on May 10, 2012.[58]  During Krehnovi's plea canvass, he answered in the affirmative when the state district court asked if he had discussed his case with his trial counsel.[59]  Similarly, in his plea agreement, Krehnovi acknowledged that he was "satisfied with the services provided by [his] attorney" and "ha[d] discussed with [his] attorney any possible defenses, defense strategies and circumstances [that] might be in [his] favor."[60]

---

[52] ECF No. 11-6.

[53] *Id.* at 2.

[54] ECF No. 11-9 at 4.

[55] *Id.* at 5.

[56] ECF No. 11-20 at 4.

[57] *Id.* at 6.

[58] ECF No. 11-13.

[59] *Id.* at 5–6.

[60] ECF No. 11-14 at 6.

1       Four years later, on April 7, 2016, Krehnovi's trial counsel testified at the post-conviction

2 evidentiary hearing that he did not recall whether he hired an investigator in Krehnovi's case,

3 whether Kelley was ever interviewed, whether he typically hired an investigator on domestic-

4 battery cases, or if he received discovery in Krehnovi's case.[61]  However, Krehnovi's trial

5 counsel explained that he was appointed on March 23, 2012, a mere six days before Krehnovi

6 entered into a global negotiation on his burglary case and the domestic-battery case.[62]

7       Krehnovi testified at the post-conviction evidentiary hearing that he wanted his trial

8 counsel to investigate Kelley, who was a passenger in the vehicle during the dispute between

9 Krehnovi and Levine, to substantiate Krehnovi's self-defense claim.[63]  At the time Krehnovi

10 pleaded guilty to domestic battery, he did not know what Kelley had said during his police

11 statement; he did, however, acknowledge that Kelley likely did not mention self-defense due to

12 his friendship with Levine.[64]  Krehnovi explained that he had not spoken to Kelley following the

13 incident and that is why he wanted his trial counsel to investigate further.[65]

14       Krehnovi also wanted his trial counsel to investigate Levine's "criminal background and

15 mental history."[66]  Krehnovi explained that he "ha[d] known Shirl for a long time, so [he] kn[e]w

16 she had mental and criminal background."[67]  Krehnovi also explained that he wanted his trial

17 counsel to investigate Levine even though he had already agreed to plead guilty in his domestic-

18 battery case because between his burglary plea and his domestic battery plea, "Levine caught a

19

20

21

---

22 [61] ECF No. 12-20 at 6–7, 9, 11.

23 [62] *Id.* at 12–15.

24 [63] *Id.* at 18–19.

25 [64] *Id.* at 26, 28, 32.

26 [65] *Id.* at 18, 32.

27 [66] *Id.* at 19.

28 [67] *Id.*

new case of domestic violence with her mother" which Krehnovi "thought was going to be a lot to help [him] weigh in on whether or not [he could] win in trial or not."[68]

Krehnovi asserted that if his trial counsel would have investigated Levine and Kelley and if those investigations had "show[n] that [he] could . . . win in a trial, then [he] probably . . . wouldn't have pled guilty" in his domestic-battery case.[69]  However, his trial counsel "told [him] there was nothing [Krehnovi] could do" because Krehnovi's "prior record was going to hang [him] anyway."[70]

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."[71]  And "[i]n any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[72]  This duty includes investigating the defendant's "most important defense"[73] and investigating and introducing evidence that demonstrates factual innocence or evidence that raises sufficient doubt about the defendant's innocence.[74]  "[I]neffective[-]assistance claims based on a duty to investigate must be considered in light of the strength of the government's case."[75]  When the record demonstrates that trial counsel was well-informed, and the defendant fails to provide what additional information would have been gained by the investigation he now claims was necessary, an ineffective-assistance claim fails.[76]

---

[68] *Id.* at 37.

[69] *Id.* at 38.

[70] *Id.* at 34, 39.

[71] *Strickland*, 466 U.S. at 691.

[72] *Id.*

[73] *Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994).

[74] *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999).

[75] *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986).

[76] *Id.*

1       The Nevada Court of Appeals reasonably determined that Krehnovi's trial counsel was
2   not deficient.[77]   Because Krehnovi had already agreed to plead guilty in his domestic-battery
3   case—in order to come to a global resolution on his burglary case—before he first met with his
4   trial counsel on the domestic-battery case, it was reasonable for Krehnovi's trial counsel to have
5   decided against investigating Levine and Kelley.[78]   Moreover, Krehnovi's trial counsel in his
6   domestic-battery case was not involved in the global settlement; counsel in his burglary case was
7   the one that had made those arrangements.[79]   Krehnovi's trial counsel in his domestic-battery
8   case only "handled the portion waiving [the domestic-battery case] up [to state district court]"
9   and the plea in state district court.[80]   Because negotiations had already concluded, and
10  Krehnovi's trial counsel was really only tasked with procedural issues, further investigations
11  were no longer necessary.   Additionally, during his plea canvass and in his plea agreement,
12  Krehnovi acknowledged that he had discussed his case with his trial counsel and that he was
13  "satisfied with the services provided by [his] attorney."[81]

14      The Nevada Court of Appeals also reasonably determined that Krehnovi failed to
15  demonstrate prejudice.[82]   Krehnovi has not shown that an investigation into Levine or Kelley
16  would have led to favorable, admissible evidence such that he would not have pleaded guilty and
17  would have insisted on going to trial.[83]   Indeed, Kelley had apparently already denied that
18  Krehnovi acted in self-defense, and Krehnovi fails to support his allegations against Levine.
19  Because the Nevada Court of Appeals reasonably denied Krehnovi's ineffective-assistance-of-
20  counsel claim, Krehnovi is denied federal habeas relief for Ground 1(a).

21  [77] *Strickland*, 466 U.S. at 688.

22  [78] *Id.* at 691.

23  [79] ECF No. 11-20 at 4.

24  [80] *Id.*

25  [81] ECF No. 11-13 at 5–6; ECF No. 11-14 at 6.

26  [82] *Strickland*, 466 U.S. at 694.

27  [83] *Hill*, 474 U.S. at 59; *see also Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland*
28  prejudice is not established by mere speculation.").

**2.      Ground 1(b)**

In Ground 1(b), Krehnovi alleges that his federal constitutional rights were violated when his trial counsel failed to communicate with him.[84]  He elaborates that his trial counsel did not adequately visit him prior to or following his waiver of his preliminary hearing in order to discuss his case.[85]  In affirming the denial of Krehnovi's state habeas petition, the Nevada Court of Appeal rejected this theory:

> Krehnovi argued counsel was ineffective for failing to communicate with him regarding his preliminary hearing or trial. Krehnovi failed to demonstrate prejudice because he failed to demonstrate a reasonable probability he would not have pleaded guilty and would have insisted on going to trial had counsel communicated further with him. Krehnovi agreed to waive his preliminary hearing and his trial within four days of counsel being appointed. Further, Krehnovi acknowledged in his plea agreement and during the plea canvass counsel answered any questions he had regarding the agreement and that he and counsel had discussed his case and his rights. Accordingly, we conclude the district court did not err by denying this claim.[86]

I find that the Nevada Court of Appeals' rejection of Krehnovi's *Strickland* claim was neither contrary to nor an unreasonable application of clearly established law as determined by the United States Supreme Court.  Krehnovi's trial counsel testified at the post-conviction evidentiary hearing that he did not recall Krehnovi personally or ever meeting with him.[87]  At that time, Krehnovi's trial counsel was carrying a caseload of "maybe 400 cases," which meant that he was unable to meet with all his clients in a one-on-one capacity.[88]  However, Krehnovi testified at the post-conviction evidentiary hearing that he spoke to his trial counsel after he entered his guilty plea in his burglary case but before he waived his preliminary hearing in his

---

[84] ECF No. 8 at 6.

[85] *Id.*

[86] ECF No. 13-9 at 3–4.

[87] ECF No. 12-20 at 7.

[88] *Id.* at 9.

12

1    domestic-battery case.[89]

2         Defense counsel has a duty to "consult with the defendant on important decisions and to

3    keep the defendant informed of important developments."[90]  Although it is unclear how many

4    times Krehnovi's trial counsel spoke with him before his plea, Krehnovi testified that they spoke

5    on at least one occasion.[91]  It is also unclear from the record whether that one meeting satisfied

6    Krehnovi's trial counsel's consultation burden.  However, even if trial counsel was deficient, the

7    Nevada Court of Appeals reasonably determined that Krehnovi failed to demonstrate prejudice.[92]

8    Krehnovi fails to explain what further information he was unable to convey or what further

9    defense strategies would have been discussed if he and his trial counsel had further

10   communications.  And because Krehnovi had already agreed to plead guilty to domestic battery

11   in order to come to a global resolution in his burglary case before he even spoke to his trial

12   counsel, the Nevada Court of Appeals reasonably determined that Krehnovi failed to

13   demonstrate a reasonable probability he would not have pleaded guilty and would have insisted

14   on going to trial had counsel communicated further with him.[93]  Because the Nevada Court of

15   Appeals reasonably denied Krehnovi's ineffective-assistance-of-counsel claim, Krehnovi is

16   denied federal habeas relief for Ground 1(b).

17        ***3.    Ground 1(c)***

18        In his final ground, Krehnovi alleges that his federal constitutional rights were violated

19   when his trial counsel failed to file a motion to suppress or a motion to dismiss based on a

20   violation of his constitutional rights.[94]  In affirming the denial of Krehnovi's state habeas

21   petition, the Nevada Court of Appeal reasoned:

22
        _____

23   [89] *Id.* at 28.

24   [90] *Strickland*, 466 U.S. at 688.

25   [91] ECF No. 12-20 at 28.

26   [92] *Strickland*, 466 U.S. at 694.

27   [93] *Hill*, 474 U.S. at 59.

28   [94] ECF No. 8 at 6.

> Krehnovi argued [that] counsel was ineffective for failing to file a
> motion to suppress or dismiss because Krehnovi believed his
> constitutional rights were violated.  Krehnovi failed to demonstrate
> [that] counsel was deficient or resulting prejudice because he failed
> to support this claim with specific facts that, if true, would entitle
> him to relief.  *See Hargrove v. State*, 100 Nev. 488, 502–03, 686
> P.2d 222, 225 (1984).  Therefore, we conclude the district court
> did not err by denying this claim.[95]

This ruling was reasonable.  To succeed on a claim that his trial counsel failed to file a

motion to suppress or a motion to dismiss, Krehnovi must first demonstrate that the motion

would have been meritorious.[96]  But his generic claim that trial counsel failed to file a motion to

suppress or a motion to dismiss fails to explain the underlying facts or basis for such a motion.

This failure to support Ground 1(c) with specific allegations does not warrant the granting of

relief.[97]  Accordingly, the Nevada Court of Appeals' conclusion that Krehnovi failed to

demonstrate that his trial counsel's actions were deficient was reasonable.[98]  Because the Nevada

Court of Appeals reasonably denied Krehnovi's ineffective-assistance-of-counsel claim,

Krehnovi is denied federal habeas relief for Ground 1(c).

## C.      Certificate of Appealability

The right to appeal from the district court's denial of a federal habeas petition requires a

certificate of appealability.  To obtain that certificate, the petitioner must make a "substantial

showing of the denial of a constitutional right."[99]  "Where a district court has rejected the

constitutional claims on the merits," that showing "is straightforward: The petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional

---

[95] ECF No. 13-9 at 4.

[96] *See Kimmelman v. Morrison*, 477 U.S. 365, 375, 385 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonably probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").

[97] *See, e.g., Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995).

[98] *Strickland*, 466 U.S. at 688.

[99] 28 U.S.C. § 2253(c).

14

claims debatable or wrong."[100]  Because I have rejected Krehnovi's constitutional claims on their merits, and he has not shown that this assessment of his claims is debatable or wrong, I find that a certificate of appealability is unwarranted in this case.

**Conclusion**

IT IS THEREFORE ORDERED that the petition **[ECF No. 8] is DENIED**, and because reasonable jurists would not find my decision to deny this petition to be debatable or wrong, a **certificate of appealability is DENIED**.

The Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

Dated: June 15, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[100] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000).